16-5949 Susan King v. Todd Harwood, et al. Oral argument, 15 minutes per side. Mr. Clay for the appellant. Good morning. May it please the court, my name is Thomas Clay. I represent the appellant District Court decision which granted summary judgment without any, I apologize your honor, I'd like to reserve three minutes for rebuttal. We're here on a grant of summary judgment by the district court on a claim of violation of civil rights where Susan King was prosecuted by particularly one KSP detective named Todd Harwood for a murder which she did not commit and it's our position that this detective together with his superiors colluded to fabricate evidence after the initial investigation basically exonerated her. There's a statement by a Sergeant Duncan from 2006 in which he states he did not believe that Miss King was involved in and within 21 days he solves this murder which had generated 27 suspects under the prior investigation. Mr. Clay, what's the most egregious thing that Mr. Harwood did in this case? Was it his testimony or did he make up some evidence that he gave to somebody else or was it something else? The most egregious thing he did your honor was go to the Metropolitan Correctional Jail in Louisville and convince a serial murderer named Mr. Jarrell to recant his confession that he murdered Mr. Breeden in this case after the Court of Appeals or after Mr. Jarrell had confessed in graphic detail to what he had done in murdering Mr. Breeden. That's long after her conviction isn't it? Yes sir, but can you bring a malicious prosecution action based on what he did long after the prosecution? Yes sir, because he testified in an effort to continue that prosecution in the Spencer Circuit Court after the conviction or after the statement came to light and there was a hearing, a 60-02 hearing in front of the Spencer Circuit Court and Detective Harwood came in and testified adversely in an effort to continue the viability of that criminal conviction. Not only did he do it but he also when he interviewed Mr. Jarrell in jail who had confessed in detail to two separate Louisville Metro Police detectives, Mr. Jarrell basically recanted his statement and he clammed up. He wouldn't talk anymore. Detective Harwood tape recorded this interview and somehow when he took his tape recorder back to the post at Campbellsburg, this tape recorder which he took behind two locked doors, the door to the post itself and a door to his office, this tape recorder somehow mysteriously disappeared. Counsel, you can make your argument as you wish but at least at least for me could you answer Judge Seiler's question in terms of what happened before her specifically the evidence regarding the bullet holes in Ms. King's floor, the floor of her house. When the initial investigation occurred there were two bullet holes in the floor and then when Detective Harwood went back there were four bullet holes. He said that there were 22 caliber bullets there which was true but these bullets did not match the bullets in Mr. Breeden's head. The bullets in his head were 22 magnum bullets. The bullets that were found in Ms. King's residence and in a tree behind her house were 22 short caliber bullets. He also testified that the bullets the 22 caliber bullets or the magnum bullets could be fired on a regular 22 and was that later found to be false? Yes ma'am. It was found to be false by none other than the Kentucky State Police Ballistics Laboratory and Detective Harwood knew that. When you say that by the lab is that Mr. Clements? Is that the discussion about the the meeting in April of 2007? I believe that's correct your honor. Okay because help me on this because I'm I'm seeing two different things in in the record. One is copper wash copper jacket sort of things and the other is is magnum versus regular. The other side says that at various points well you know she could have had other kinds of bullets just the fact that all the ones in the tree were those isn't proof of that but in your brief you specifically say that you can't fire the both of them from the same type of gun. In the complaint I sort of see an inference but I don't see that as a statement. Is there a a record cite about what you can and can't fire the magnum from? I believe the report from the ballistics test is in the record your honor. I can't make that representation but I believe that there are some ballistic report in the in the record and I was that's kind of one of my questions is whether that's the one you're referring to. There's a the one that I have been looking at is uh by signed by there's a report signed by Ritter. Now the the the memo the the complaint talks about a conversation that Harwood had with Clements. Is there a report by Clements? My understanding is that there is a report your honor that indicates that a magnum bullet cannot be fired from the kind of weapon from which Miss King fired those 22 caliber short rounds. Okay so if we if we look in the record you think uh with sufficient work we can find that report? Yes sir and I apologize for my not having that work done already for okay so go ahead go ahead then because there were other misstatements. Let me ask you this question. Go ahead. Is your main complaint against Mr. Harwood the fact that he went to the grand jury and testified to this against your client? Your honor it was I apologize it was my purpose this morning not to even mention the grand jury because I know that's a minefield. Now I'm prepared to talk about the grand jury testimony but I'm not referring to anything that he said in front of the grand jury as a basis for this cause of action. So you're just basing it upon reports that he filed? Falsified and fabricated evidence that's what we're basing it on your honor. Yes sir. Your client wouldn't have been charged unless he went to the grand jury would wouldn't she? Absolutely not. Would not have been charged unless he'd gone to the grand jury. Now I can certainly comment about the quality of his grand jury testimony but you get that's your now look on it by the rebirth case right? I believe that's not only the rebirth case I think this court just came out with a case within the last 10 days or so I think the Sanders versus Jones case. Yeah. So isn't it in a sense it's not it's not that he went to the motion by Mr. Harwood that's your argument? Exactly he got the wheels rolling and he got it through fabricated and falsified evidence with that regard to what he testified for the grand jury and it's still a problem for me that perjured testimony cannot be the basis for any kind of corrective action in the civil court but I understand what that holding is and certainly that's why I was not even going to address his grand jury testimony or his trial testimony for that there was no trial but the hearing testimony that at the 6002 hearing so we haven't talked about the statute of limitations if the court cares to talk about that and I'm not going to go through all the other precedent that sets the date for the effective running of the statute on a malicious prosecution claim there's six or three six circuit cases which I think speak directly to that one from 2015 in Norrie versus County of Oakland then there's a 1988 case McCune versus City of Grand Rapids and a 2001 case Ruff versus Runyon all of which at least in my view hold that the statute does not begin to run until there's a favorable termination of the prosecution in favor of the plaintiff and there's no question that this prosecution was not terminated until the indictment was dismissed because the opinion of the court of appeals did not resolve the issues the court of appeals sent the case back to the circuit court for a trial on the murder and tampering with physical evidence charge charges so it's our position of course that the statute did not begin to run until October the 9th 2014 and we timely filed this complaint on October the 1st 2015. I'm also troubled by the the judge did not allow us any discovery and we asked to have some discovery he said we weren't specific enough in our request seeking discovery but as I understand it the discovery limitation for specificity applies only if you've had some discovery we've had no discovery so and I understand the limitations imposed on discovery for a qualified immunity defense I understand that too but still there was no opportunity for us to discuss or to pursue any discovery and certainly we would have welcomed the opportunity to have deposition testimony from Mr. Harwood and his supervisors who oversaw the investigation and prosecution of Susan King. I think it's also significant to note that this is not a situation where a determination of probable cause is a foregone conclusion the fact is that the court of appeals reversed this conviction on Kentucky's rule that she has shown actual innocence under rule 6002 f actual innocence is inconsistent with the finding of probable cause and we have examined in our brief the elements that Harwood relied on to establish probable cause is I think they're 27 points or 17 points and we have taken issue with not every single one of them because some of them like the one where she had the vision that the body was going to be found in water that where does the 17 appear is there a document that says 17 or did you divine that from something Harwood came up with his theory that there were 17 reasons that supported that in a this about the about the discussion with the with the with the lab technician was do you assert or is there in the record that that information did not come into the hands of the prosecutor or we you said there's a lab report which we haven't found yet but was that lab report given to the prosecutor when he made the because the prosecutor made the decision to go to the grand jury yes sir she it was a she actually the commonwealth attorney and I can't make that representation your honor I'd like to be able to pursue that and and ask her in a deposition whether detective Harwood provided this ballistics report to her with some other information that he had access to which I would like to find out if he provided that to her or withheld it but unfortunately we were not afforded the opportunity to do any discovery okay but at least from your view of the record we don't know the contrary that is the a detective in this situation might have said okay there are all these problems but I gave it all to the prosecutor prosecutor made the decision he'd be home free we can't read the record that way at least according to you correct your honor yes sir thank you counsel you'll have your time for questions morning your honors perry arnold on behalf of the affilies in this case and sir I want to start with the statute of limitations issue because you allege that these claims are barred by the statute of limitations but since the the court the appellate court sent the case back to the trial court for further proceedings after finding that it appeared that she was actually innocent how do you how do you justify your claim that the time began to run at that point and I know you cite the Wallace versus Cato case but ostensibly once the case went back the trial court could have initiated you know could have initiated further proceedings couldn't they well we could talk about that for a your honor but I think it might have been barred by double jeopardy because she'd already been convicted and served time in prison even though the case was the conviction was vacated by the court of appeals but I do refer to the Wallace versus Cato decision and I'll cite that directly because that supreme court decision says a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action and it goes on to say a cause of action based on a wrongful conviction accrues on the date when the conviction is set aside not the date when the charges are dropped so clearly in this case when the court of appeals which was in July of 2014 set aside her conviction under Wallace v Cato that's when her cause of action for malicious prosecution well if taking what you say as an accurate statement what was for the trial court to do I think they had no choice except to dismiss the charges and there was a new commonwealth attorney that that dismissal then in your scenario had no effect because it had been set aside by the appellate court yes ma'am and again I refer I think that's what Wallace v Cato clearly says and she absolutely and she contends now that she had maintained her innocence from day one so when her conviction was set aside she knew at that point that she had a cause of even though this the appellate court took that action they still sent it back the appellate court could have just dismissed it at that point couldn't they I believe they could have and they said they didn't they sent it back and and obviously a range of things could have happened once it went back to the trial court and that's why your your argument there is a little bit troubling okay well let me accept your position on that and that it was not that her cause of action did not accrue until the Simpson County Circuit Court dismissed the charges we still have the issue with regard to probable cause and the district court was correct when it said that probable cause is mandatory for a malicious a lack of probable cause rather is mandatory to maintain a malicious prosecution action in Thacker versus City of Columbus this court said that the plaintiff must establish a lack of probable cause now clearly an Alfred plea is a guilty plea in this case in the complaint the appellant has set out a state cause of action for malicious prosecution and a federal action for malicious prosecution under the Kentucky case of Broadus versus Campbell it says that under Kentucky law a plaintiff cannot maintain a after entering a plea of guilty and clearly North Carolina versus Alfred that is a plea of guilty and in order to enter an Alfred plea you have to stipulate that the commonwealth has sufficient facts to convict you if you were to take that case to a trial that's probable cause under federal law of course as this court well knows a grand jury indictment bars a federal cause for malicious prosecution that's under Davis versus McKinney Barnes versus Wright Cook versus McPherson so under either theory of malicious prosecution state or federal they're barred first of all by the guilty plea secondly by the grand jury indictment now let me take you back to the Wallace v Cato argument yes sir query as to whether that should be read as saying what saying what you said with regard to false arrest or false imprisonment but not malicious prosecution because the prosecution is still alive until the charges are completely dropped the you're you're if you're set at liberty then the arrest or imprisonment may end your honor for false arrest or false imprisonment the statute begins to run on the day the person is arraigned so it has nothing to do with when the conviction set aside or when the charges are ultimately dismissed it begins to run the day that the person's arraigned that would have been far in advance here and we argued that with regard to statute limitation that's what Cato is talking about knocking at you know the rule in heck you can't sue until uh you're not convicted Supreme Court in in Cato says that heck doesn't bar you from going forward i.e. the statute has on false arrest and false imprisonment but it's not a malicious prosecution ruling is it i disagree your honor respectfully i believe that that was a malicious prosecution action and if i'm wrong i apologize to the court but we can look at it you may be but regardless even if you're right your honor we still have to go back to whether or not a malicious prosecution action can lie in this case and it cannot because of the probable cause standard okay and that's the underlying the merits i was asking the question right and that's the underlying issue here with regard to our qualified immunity defenses and the district court found that we were entitled to qualified immunity based on the probable cause let me take you what you were just saying two arguments one that no matter what people have done to you if you if you plead guilty for strategic reasons you can never sue them that's basically your argument that's black letter law your honor under malicious prosecution you cannot bring an action for malicious prosecution if you enter a plea guilty to the underlying criminal charge okay so what's your best case that makes that an absolute the kentucky case law is broadus v campbell that was cited actually by the district court in its order of dismissal and obviously we refer again back to the federal case law with regard to a grand jury indictment being a complete bar to malicious prosecution sorry judge donald okay well i was just going to ask you on your last sort of absolute statement so even if there is um you know let's let's assume hypothetically that there is undue pressure you know false statements that are made to uh let the person know that things are going to be really bad if you don't plead guilty and they make this strategic decision if there's misconduct that gives rise to the entrance of that plea still um it's you're forever barred from bringing an action is that is that your position that's that's the case law as it stands today your honor in kentucky under broadus v campbell and again i think the law is clear that an alford plea is a guilty plea and i would cite the court there to gray bill versus united states postal service from the federal circuit uh in 1986 decision i think the case law is numerous cases have found that an alford plea is a guilty plea and i don't think you can surmount that but let's go back and talk about what the evidence in this case really was they can't they can't get around the fact that there was a volatile relationship between the decedent and the appellant in this case miss king they can't get around the that she had made these statements to numerous people that his body would be found floating in water they can't get around the facts that numerous people would be found floating in water did she did she say she believed she said she had had a vision or in another case she said that she had an apparition and that she had seen his body floating in water that deany breeden would be found floating in water and this was before his body was ever found in addition numerous that was known to of investigation right yes sir and nobody thought they could bring charges at that point you need to remember that in the early parts of the investigation the state police twice applied for search warrants and were denied i don't know why they were denied they didn't have very good evidence well i'm according to the judge i disagree with that that was after sergeant carrie duncan had seen the two bullet holes in her floor i'm just saying that that judges normally grants i'm not saying that i know why the judge did it but as a legal standard it would have been because there was insufficient evidence of probable cause but again once in 2006 when detective harwood came back with the knowledge that he had including this knowledge about her statement about his body would be found floating in water before he was ever found about the volatile relationships about the fact that she made no phone calls to him after the day he disappeared all of those things he went to the commonwealth attorney presented the commonwealth attorney with this commonwealth attorney prepared an affidavit for a search warrant they presented that to the judge present to the commonwealth attorney that she weighed about a hundred and had an artificial leg or hip or whatever it was didn't even have an artificial leg did she yes she did at the time she did have a prosthetic leg at the time there's evidence in the record that she did now that may be disputed by appellant's counsel but there's evidence and record that she did where would i where would i find that evidence i'm sorry where would i find that in the record i mean i'm not disputing you i can't give you that the reference page at this point in time your honor i don't have that we'll look for that one we're looking for his as well go ahead again the evidence presented to the commonwealth attorney he saw fit to present this to a judge for a search warrant i want to also make the court aware that after the search warrant revealed four in the floor they found a spent 22 round in the floor joist they didn't even seek an indictment at that point in time the commonwealth attorney asked that they get more evidence with regard to blood that was found in one of those bullet holes but this was subsequent to his having been missing right when they found the two other bullet holes in the oh he'd been missing your he'd been missing for seven and a half years but the blood that was found in one of the bullet holes in the floor was found to have had human male dna in it so it could not be matched to denie breeden because again this is seven and a half years after his body was found because that was when they got the search i'm just just balking because when you said he'd been missing for seven and a half years i'm missing he was found it's seven and a half years when they get the search right he wasn't still missing no sir okay i apologize he was found november the 5th 1998 what i thought but it wasn't until 2006 that they got the search warrant what's your take what's your take on this uh magnum bullets non-magnum bullets copper wash uh copper jacket i don't think there's anything in the record that indicates that those bullets could not have been fired from the same gun but that's all there's also evidence from statements that made to detective harwood and to other detectives that she was known to have a number of different 22 handguns in her home she was known to have a number of different kinds of ammunition in her home so it's not as though we're dealing only with one handgun here necessarily so do you think there is or isn't a report from the state police uh tech about the the ability to fire magnum versus non-magnum i can't answer that judge okay i don't know that answer we'll have we'll have a romp through the record on both sides go ahead but but again i believe that there was let me have was it was any handgun found that matched up any of the bullets that were located there inside the house oh your honor when they executed the search warrant in 2006 no handguns were found in her home but we have to understand that after 1999 when sergeant carrie duncan was there and saw the bullet holes and asked to search the home and was refused she had ample time to get rid of any handguns and any ammunition that was in her home there were no handguns found although there were numerous witness statements as to her possessing and obviously from the second search warrant of the tree i believe there were 130 some rounds of 22 ammunition that were taken from that tree in her backyard so clearly at some point in time there'd been 22 firearms on that present on that premises thank you but none of those bullets when i say match i'm speaking loosely none of those bullets either in the tree or in the floor match the ones in his head they the ones the one in the floor was too deformed to make a match with anything and i don't i don't think there was necessarily any attempt to make a comparison with the ones that were taken out of the tree when you say it was too deformed to make any comparison i thought that was that was where the part about the copper wash versus the copper jacket came i think that's an argument the appellant's attorney is making but i don't know that that's in any how does he know what was what was on the what you call deformed bullet if somebody didn't do some kind of tests on it again your honor i can't speak intelligently to that point i think that's an argument appellant's making there's a lot of things in the in the complaint that are not necessarily supported by the record what's your position on the judge's um denial of um the ability to conduct any preliminary discovery again your honor qualified immunity is a defense to litigation not just a defense to uh to having to pay or liability so i think the judge is correct in what he did here i think the record is so clear here and the law is so clear that an establishment of probable cause establishes qualified immunity and defeats a malicious prosecution action therefore judge in in the district court the judge was correct in denying any further discovery because there was no point in it you know i know that you say a lot lots of things here are you know clear and abundant and without dispute but then we still have this woman with the artificial leg who spent what five years in prison for a crime that the the court ultimately determined that she didn't commit they did not find that she didn't commit it they vacated her sentence based on a false confession by mr gerald which occurred as judge boggs said earlier many years after the establishment of probable cause for the investigation so i don't your position is still that's a false confession by gerald yes sir though the court his confession was that he shot i mean what was the basis for the i i understood your adversary to say correctly that the the reversal by the kentucky appellate courts was based on actual innocence it is but they didn't understand what gerald's confession was because he said he killed deanie breeden in henry county at three o'clock in the afternoon on october 26th 1998 kentucky appellate courts are wrong i mean don't shouldn't we have to take it at face value for these purposes well if you if you understand what his confession was that he killed the man at three o'clock in the afternoon when he talked to somebody at 4 30 in the afternoon and when gerald said he killed him with a 44 magnum when the the bullets taken out of his head were 22s gerald's confession was completely false thank you thank you your honor expired i regret i didn't reserve more than three minutes there's several misstatements i want to correct take your best shot miss king never had a prosthetic leg in fact her leg was cut off as a result of an accident to the point where they took muscles out of her back to try to create something at the stump where she could have a prosthetic device they were never able to do that she never had a prosthetic leg if the appellee says that the court of appeals got it wrong on mr gerald's statement i would invite the court to read it will the verbatim statement that the court of appeals quoted that mr gerald gave describing in graphic detail how he murdered this man the other thing that i and our response to the motion dismiss your honor in response to your question is where we find the ballistics report there are two reports in there one has to do with a bullet fragment recovered from the floor of miss king's residence the other has to do with the 31 bullets that were taken out of the tree behind her house the one to which i'm referring i do not believe is in the record but there are two ballistic reports in there that describe the comparison between the fatal bullets and the bullets taken from miss king's floor which there's insufficient residue to make a valid comparison and the 31 bullets that were extracted from the tree as far as the guilty plea precluding the being a stipulation of probable cause i reply brief it's simply that's simply a misstatement of the law as i understand it in this circuit um there's a quotation rejecting defendant's argument this court held that the guilty plea to preclude his subsequent civil claims dodrill versus lunt a 1985 case we cite holding that estoppel collateral estoppel did not bar plaintiff's 1983 claims but if that's a sixth circuit case is that kentucky is that a kentucky case because your adversary seems to rely on broadest v campbell as kentucky law i i'm not sure but i would believe that federal law would control the effect of a plea of guilty if it's set aside and this case clearly says that that i hate to use that term clearly nothing's clear which case were you reading from you this is uh dodrill versus lunt 764 f second that that is the case you're reading from that's not the cited case all right go ahead that that's the sixth circuit case uh as far as the statute of violations the wallace case is a false arrest claim and again i hate to disagree with my opponent but i think a false arrest claim starts with the date of arrest not the date of arraignment and the court you're you're exactly right your honor this case could have resulted in another conviction it was remanded for a new trial so the fact that uh if we had filed this consistently with judge stiver's decision it would have been filed while this case was still pending and it would have been subject to dismissal for the same grounds that these other cases are where there's a collateral proceeding attack in the validity the underlying validity of the criminal prosecution so i think we're on firm ground on that let me take you back just to make sure i got the the part about the police reports right you said there are two reports but you said that only one of them is in the record and so the stuff about whether you can fire the the kind of bullets from the kind of gun uh which you refer to from this conversation are you saying that indeed that kind of statement is not in the record no sir i believe it is in the record i believe it's in the complaint and i believe there's a reference in the complaint about the incompatibility of these 22 short rounds with the magnum rounds well let me ask you that because you know i i think we're talking about paragraph 72 or thereabouts and i did not see the the income is that where i should be looking there's like there there a number of a series of numbered paragraphs uh which make those those um those statements and i had the complaint here i'm sorry i'm missing it um yeah here we go i'm sorry uh paragraph 80 is about speaking with matthew clements who performed the comparison of the different uh bullets and number 72 harwood believed king was not the weapon used in breedon's murder but that doesn't talk about magnums and incompatibility and i didn't see any statement in the complaint about that i saw a statement in your brief and that's why i've been hunting for the the support for it i say you may or may not be right but i i did not directly find something in the record yet although i haven't read every word of the reports i'm looking at paragraphs 85 and 86 your honor okay and you say the ksp lab report okay did not match the bullets but that match is still not that they they couldn't have been fired from but that's what you'd rely on then is 85 86 um at 81 at 81 is again it says they do not match on clements told harwood that the bullet in the floor was a 22 caliber copper wash the bullet in the skull was a 22 caliber magnum clearly establishing the bullets did not match but that's different from saying that the same gun couldn't fire them both yes sir i agree that is that is not stated in the complaint okay all right thank you counsel case will be submitted clerk may call the next case